**TAGOAI of Tula and**
**FANINI TAGOAI of Tula, Objectors**
**v.**
**TUIAFONO T. of Afono, Applicant**

No. 3-1962

High Court of American Samoa
Civil Jurisdiction, Trial Division
[Matai Title: "Tela" of Afono]

February 7, 1962

Lolo, Counsel for Tuiafono T.
Aumoeualogo, Counsel for Panini Tagoai.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Tuiafono T. of Afono filed his application with the Registrar of Titles to be registered as the holder of the matai name Tela attached to the Village of Afono. Tagoai and Panini Tagoai, both of Tula, each filed an objection to the proposed registration, each of them becoming a candidate for the name. Hence, this litigation. See Section 932 of the A. S. Code.

Prior to the hearing, Tagoai withdrew his objection and ceased to be a candidate for the name and a party in the case.

██ Section 926 of the A. S. Code, as amended, prescribes the qualifications for holding a matai name or title. The evidence established that each of the two remaining candidates, viz., Panini Tagoai and Tuiafono T., possesses those qualifications and is, therefore, eligible for registration as the holder of a matai name or title.

Section 933 of the A. S. Code as amended prescribes the law which the Court shall follow in determining which one of opposing candidates for a matai name or title shall be registered as its holder. It reads as follows:

"Consideration Given by Court: In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

(b) The wish of the majority or plurality of those members of the family related by blood to the title;

(c) The forcefulness, character, personality and capacity for leadership of the candidates;

(d) The value of the holder of the matai name to the Government of American Samoa."

Panini and Tuiafono T. filed their pedigrees with the Court, Panini claiming to be the great-grandson of Tela Salipopo while Tuiafono T. claimed to be the great-grandson of Tela Kuka. Panini testified that, according to the tradition in his family, there never had been a Tela Kuka and that Tuiafono had no Tela blood in his veins. Tuiafono testified that according to family tradition Salipopo was never a Tela and that Panini had no Tela blood in his veins. Sua and Gaono, both old men of Afono, testified that they had seen Salipopo but that he had never held the Tela title. Considering the evidence as a whole, we think the weight of evidence is to the effect that both Panini and Tuiafono have Tela blood in their veins, but that Tuiafono has more Tela blood than Panini. Despite the conflict in the testimony, it is our conclusion that Tuiafono prevails over Panini on the issue of hereditary right.

Panini and Tuiafono each filed a petition with the Court purporting to be signed by those blood members of the Tela Family supporting his candidacy. There were 970 signers on the petition for Panini and 354 on the petition for Tuiafono. Each candidate testified that all of the signers on the petition for him were blood members of the Tela Family.

Tuiafono claimed that a total of 929 of the 970 signers on the petition for Panini were not blood members of the Tela Family. He admitted that 41 were blood members. There were 727 on the petition who claimed descent from a Tela Leo'o and 202 who claimed descent from a Tela Sualevai. Tuiafono testified that according to his family tradition there had never been a Tela Leo'o nor a Tela Sualevai, and that consequently the above 929 (727 + 202) were not blood members. He also claimed that 31 signatures on P. 13 of the petition for Panini were forged, having been written by the same hand. However, these 31

are listed as descended from Tela Sualevai and are included in the above 202. In a few cases the same person had signed twice on Panini's petition. Also in a number of cases (less than 10 were called to our attention) both husband and wife had signed. Since it is the custom for a Samoan to marry outside his clan, it would follow, as a general proposition, that if the husband was a blood member of the Tela clan his wife (although she may have signed with her husband) would not be a blood member. Of course, a husband might be a descendant of one Tela and the wife a descendant of another Tela who had no blood connection with the first Tela. In rare cases the parties having no common blood might marry and both be blood members of the family. However, we think, from the evidence, that in a number of the instances where both husband and wife signed Panini's petition that while one may have been a blood member the other was not.

Panini objected to a total of 334 out of the 354 signers on the petition for Tuiafono, admitting that only 20 were blood members of the family. Of the 334 signers objected to by Panini, some claimed descent from a Tela Malosi, some from a Tela Kuka, some from a Tela Malaga, and the remainder from a Tela Veve. Panini testified that according to family tradition there never had been a Tela Malosi, a Tela Kuka, a Tela Malaga or a Tela Veve, and that, therefore, the above 334 were not blood members.

Panini listed 10 former holders of the title Tela in his pedigree in the following order: Tela (the founder of the title Tela in Afono), Tela Siafia, Tela Sualevai, Tela Taeolevai, Tela Leo'o, Tela Salipopo, Tela Moke, Tela Ifoese, Tela Leuea, and Tela Ioka. Tuiafono listed nine former holders of the title in the following order: Tela Malosi, Tela Malaga, Tela Siafia, Tela Moke, Tela Kuka, Tela Veve, Tela Ifoese, Tela Leuea, and Tela Ioka. An examination of these two lists reveals a considerable

divergence as to who the early holders of the title were. Allowing 20 years, on the average, for each Tela to hold the title, it would follow that the first Tela in Panini's list lived about 200 years ago, while the first one in Tuiafono's list would have lived about 180 years ago. Needless to say, tradition handed down by word of mouth (and most family tradition, particularly that antedating 1900 when the Government was established and almost nobody could write) over a period of 100 years or 200 years is subject to great error. If A tells B a story and B tells the same story to C 25 years later and C to D 25 years later and D to E 25 years later and E to F 25 years later and F to G 25 years later and G to H 25 years later and A could be brought back to life and H should tell him what he had heard from G, in many cases A would not recognize it as the same story he had told B 125 years before. This simple fact explains why one member of a family who has learned family tradition from one source may testify to an entirely different family tradition from that which will be testified to by another member of the same family who has learned the family tradition from another source. Both may be equally honest but may tell different stories.

■ In weighing testimony, as we must do in this case, we think positive testimony is entitled to more weight than negative testimony, all other things being equal.

"It is . . . a long-recognized general rule of evidence that all other things being equal, positive evidence is stronger than negative evidence. The rule is that where witnesses are of equal credibility and there are no extraneous circumstances affecting the weight of their testimony, testimony that a certain event happened or that the witness saw or heard something at a particular time or place is of more weight and value as evidence than testimony of other witnesses, with the same opportunities, who state that they did not see or hear anything at that time or place." 20 American Jurisprudence 1037.

We think that the positive testimony of Panini that there was a Tela Leo'o is of more weight than the negative testi-

mony of Tuiafono that there was not. We think both of these witnesses are of equal credibility. And we think that the positive testimony of Tuiafono that there was a Tela Malosi, a Tela Malaga, a Tela Kuka and a Tela Veve is of more weight than the negative testimony of Panini that no such Telas ever existed.

After weighing the testimony carefully, it is our conclusion that there are more blood members of the Tela Family who wish Panini to hold the Tela title than there are who wish Tuiafono to hold it. We, therefore, find that Panini prevails over Tuiafono on the issue of the wish of the majority or plurality of those members of the family related by blood to the title.

Tuiafono is 41 years of age. He completed seven grades in school. He speaks very little English. He served as a Samoan Marine in World War II. After the war, Tuiafono attended the vocational school established by the United States for World War II veterans in Utulei. He graduated from the Agricultural Division of the school. He then returned to Afono and has worked on family plantations ever since. He also served his matai. Since the death of the last Tela, he has furnished the monotaga for the Tela Family in Afono. He has had no regular job since graduating from the vocational school other than working on family plantations in Afono and rendering service to the matai. He is a leading young man in the Tela Family and also in the Ia Family. He has been a choir leader for 19 years.

Tuiafono is a carpenter. Last year he and five helpers built two Samoan houses. They received a cash contribution of $150 for building one house and $280 for building the other one. The six were furnished with food and tobacco while engaged in the construction of the houses. In addition to the cash, they were also given some fine mats. The mats and cash were divided among the six. Tuiafono testified that he sold taro, taamu, bananas, and cocoa from

his plantations for which he received a total of approximately $370.00 in 1961. He also testified that he sold about $50 worth of fish in 1961. He did not keep track of the figures, and the $370 and $50 are just estimates. He sells a pig occasionally as well as a few chickens. Tuiafono has a small boat which he permits the people of Afono to use. It is also used by representatives of the Department of Medical Services visiting Afono to render medical aid to people in Afono as well as other people visiting Afono by sea. Tuiafono's two sisters in the United States and his aunt, who is a nurse, give him money to be used by him for the family. His wife, who is also a nurse, gives him money for the same purpose.

Panini is 34 years of age. He graduated from the Samoan High School in 1951. He became a teacher in 1952 and has continued to teach ever since. He has attended teachers' institutes each year, beginning in 1952. At present Panini is the principal of the Alao-Tula School. He has six teachers who work under his supervision. There are 168 pupils in his school. Panini has plantations in Tula. While he lives in the Tagoai Family in Tula (his uncle is presently the Tagoai), he has nevertheless rendered service to the Tela title. Panini's salary as a teacher is $1364 a year. He received approximately $40 last year from the sale of mats. He has brothers and sisters, some of whom have jobs in the United States, while others have jobs in American Samoa. They give Panini money to be used for the benefit of the Tagoai Family. Panini speaks English quite well.

During the course of the hearing, which lasted almost two days, the judges had an excellent opportunity to observe the personalities of both candidates.

It is our conclusion from our observation of the candidates and the evidence that Panini prevails over

Tuiafono on the issue of forcefulness, character, personality, and capacity for leadership, and we so find.

The value of the holder of a matai title to the Government depends to a considerable degree upon his capacity for leadership. In this case, Panini has demonstrated his capacity for leadership by the fact that he has procured an education, become a teacher, and been promoted in the Department of Education to the principalship of the Alao-Tula School, with six teachers and 168 pupils. We think from the evidence that he will be of considerable value to the Government as a member of the Department of Education. He has much more education than Tuiafono. He speaks English well and will be able to represent his family well in any dealings it may have with the Government. It is our conclusion from the evidence that Panini prevails over Tuiafono on the issue of the value of the holder of the matai name to the Government of American Samoa, and we so find.

■ Since we have found that Panini prevails over Tuiafono on the second, third, and fourth issues, while Tuiafono prevails over Panini on the first issue only, it follows that we must award the title Tela to Panini.

### DECREE

Accordingly, it is ORDERED, ADJUDGED AND DECREED that Panini Tagoai shall be registered as the holder of the matai name Tela attached to the Village of Afono.

Costs in the sum of $40.00 are hereby assessed against Tuiafono T., the same to be paid within 30 days.